*Kinney, Ballou & McClanahan* for libellant.

*F. M. Hatch* and *E. Caypless* for respondent.

---

ROSE BERLINER, by her next Friend, Solomon Berliner, *v.* THE STEAMSHIP "CITY OF COLUMBIA," her Boilers, Engines, Machinery, Boats, Tackle, Apparel and Furniture.

SUBMITTED ON BRIEFS, JANUARY 28, 1899.   DECIDED MARCH 10, 1899.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE STANLEY, IN PLACE OF FREAR, J., ABSENT.

A master of a ship confined a passenger in order to preserve discipline and good order, the libellant, the daughter of said passenger, insisted on sharing her mother's confinement and was put together with her mother in a locker for an hour or less. Held confinement voluntarily submitted to is no ground of action for damages against the ship.

OPINION OF THE COURT BY CIRCUIT JUDGE STANLEY.

This cause comes to this Court on an appeal by the libellant from a decree of the Hon. A. Perry, First Judge of the First Judicial Circuit, sitting in admiralty, dismissing the libel against the "Steamship City of Columbia," her boilers, engines, machinery, boats, tackle, apparel and furniture.

The decision upon which the decree was founded reads as follows:

"The libellant herein claims the sum of Five Thousand Dollars damages resulting to her by reason of an assault and battery alleged to have been committed upon her by the master of the steamship 'City of Columbia,' on the 4th of September last, while said ship was on a voyage from Seattle, Washington, to Hilo, Hawaii, and also by reason of an alleged false and unwarranted arrest and imprisonment of said libellant by said master on the 4th, 5th, and 6th days of said month during the voyage aforesaid and also while the ship was at anchor in the harbor of Hilo. In the libel, it is further averred by way of aggravation that at the time of the alleged assault and arrest the master used harsh and insulting language to the libellant, and that during a part of the time of her imprisonment the door of the stateroom in which libellant was confined was kept open and that libellant was thereby subjected to indignity and gross insult and was deprived of her rights and privileges as a passenger.

"From the evidence adduced I find the facts as follows:

"The American steamship 'City of Columbia,' on which libellant and her father and mother were first cabin passengers, left Seattle, Washington, on August 26th last, on a voyage to Honolulu via Hilo, bringing freight and a large number of first and second cabin passengers. Early in the evening of Sunday, the 4th of September, while the ship was on the high seas, Solomon Berliner, libellant's father, was assaulted by one B. H. Colegrove, a fellow passenger, with a belaying pin and seriously wounded in the head. For a few moments it was thought that Berliner was dead; this was soon found not to be so, but the ship's surgeon gave it as his opinion at the time that the man could not recover. About an hour after the assault, the surgeon so far modified his opinion as to say that he thought that Berliner had 'a fighting chance' for life, and it was not until about eight o'clock the next morning that the wounded man was considered to be out of danger.

"Shortly after the assault, the surgeon while in attendance on the patient, advised that absolute rest and freedom from disturbance of any kind was essential to recovery. In consequence of this, and also for other reasons which need not be now stated and the sufficiency of which need not be now considered, the master determined to arrest Mrs. Berliner and to place her in confinement. Approaching the place where, on deck, she was seated with her daughter, the libellant, the master ordered

the mate to arrest Mrs. Berliner and to take her to a certain room or locker on the lower deck to be there confined. As the officer started away with the mother, the daughter began to cry and told the captain that she wanted to go with her mother; the captain at first refused, but finally, the girl insisting that that was her desire and that she did not wish to be separated from her mother, and the mother herself returning to the scene and declaring that her daughter should not be separated from her, yielded and permitted her to enter the small room or locker in which her mother was confined. There the libellant remained for an hour, or perhaps less, when she was taken to her father, at his request, he at the time still being on deck. After being with him a few minutes, she was taken to the stateroom of one Harris, her uncle, the latter having expressed a desire to speak to her there. She was with her uncle about five minutes, and was then taken to a second class stateroom, where she remained, except as below stated, until about ten o'clock the next morning. This stateroom was chosen by the captain for the libellant in consequence of the surgeon's direction that her wounded father must have absolute rest and quiet, and because no other vacant stateroom was available. Libellant testifies that the door of this room was locked on the outside, but of the truth of this I am not satisfied. The captain did not order the door locked. A guard was, however, stationed outside of the door, with instructions to call the stewardess whenever requested to do so by the libellant and to attend generally to any other requests made by her.

"At about eleven o'clock that night, or perhaps earlier, libellant again visited her father, at his request, on this occasion in his stateroom, remaining with him for about fifteen or twenty minutes. During this visit, upon the urgent request of Mr. Berliner, his wife was allowed to come to his room, and she was not thereafter separated from him.

"Returning to the second class stateroom, libellant asked the mate to bring her a certain book and a pack of cards. The cards were brought, but not the book, for some reason or other. About midnight libellant went to sleep and did not awake until shortly before ten o'clock in the morning. That the room was well ventilated and not uncomfortable, this fact of itself attests. At about ten o'clock, she went to her father's room and remained there until Hilo was reached on the following morning. A guard was stationed outside of the door of Mr. Berliner's room, with instructions to keep the door open to have Mr. Berliner constantly in view and not to permit him to be disturbed.

Libellant was at liberty to have her meals at table with the other passengers, but under the circumstances she preferred to remain in her room and to have her meals brought there, and this was accordingly done. She herself testified that in regard to meals, she had no cause for complaint.

"To summarize thus far, then, my finding is that the libellant was not at any time imprisoned in any one of the three rooms referred to—certainly not in the small locker, because she went there of her own free will; not in her father's stateroom, because while there she was at liberty to do as she pleased except to disturb or interfere with her father; and not in the second class stateroom because the only limitations there placed upon her were that she should occupy for the night that room instead of her own stateroom and that she should not visit her father except with the captain's permission. These restrictions to her liberty were proper and justifiable under the circumstances and cannot constitute a cause of action.

"With reference to the alleged interference with libellant's liberty while the ship was in the harbor of Hilo, the facts are that all of the passengers with the exception of a few reporters and two or three residents of Hilo well known on shore, were detained on board for two or three hours pending the making of a report by the captain to the Customs officers of the port, and that there was no discrimination against libellant. When finally the other passengers were allowed to land, libellant also was allowed to and did go ashore.

"The averments of an assault upon libellant, and of the use of harsh and insulting language to her, by the captain, are shown by the evidence to be unfounded.

"Libellant's claim is, in my opinion, entirely without merit. The libel is dismissed and the attachment issued herein is dissolved.

"Decree accordingly."

While recognizing the correctness of the general principles of law as to treatment of passengers cited by appellant's counsel, upon a review of all the evidence we adopt the findings of fact made and the conclusions deduced therefrom by the trial court, as we are of opinion that the evidence fully justifies those findings and conclusions. In short, we find that the original confinement of the libellant in the small locker was made at her own request; that the further limitations placed upon her liberty were justifiable under the circumstances, and that the averments

by the libellant of an assault upon her and the use of insulting and abusive language to her by the captain were not supported by the evidence.

The appeal is accordingly dismissed and the decree of the trial judge sustained.

*G. A. Davis* for libellant.

*R. M. Hatch* and *E. Caypless* for respondent.